Good morning, Your Honors. May it please the Court, I'm Andrew Ogilvie. I'm here to represent Mrs. Pintos in this case. There are three issues in the appeals, including the cross appeal. Our appellate issue is the permissible purpose asserted by Pacific Creditors and Experian, and then the other issues have been raised, either in the opposition brief by Experian and in its cross appeal. I'd like to reserve as much time as I can for rebuttal. Well, you've got 19 minutes, Your Honor. I think that you're going to hit – I think that you can be fairly brief in your main argument, because we would like to hear from the other side on the legal issues. Congress enacted the Fair Credit Reporting Act for two reasons, as stated in TRW v. Andrews. One of them is to promote efficiency in the banking system, and the other is to protect consumer privacy. This case doesn't involve the banking system. It does involve consumer privacy. The district court's reading of this Court's has-been decision eliminates the distinction that Congress drew in the permissible purpose part of the statute. In terms of your handling of has-been, do you think that was incorrectly decided, or are you conceding it was correctly decided where there was a judgment? Because it specifically rejected the addition of the child welfare sections to the statute. I wasn't clear from your brief. Are you saying, yeah, it's – well, whether it's correct or not, it doesn't apply to us because there was no judgment. Are you saying it was incorrectly decided, or what are you saying about has-been exactly? Your Honor, I'm saying that with respect to has-been, it is the law in the Ninth Circuit, and I'm not asking to overturn has-been. I'm asking simply to limit it to the facts that were presented in has-been. I think that had has-been been argued differently, there could have been a different interpretation, more of a strict interpretation of the statutory language. But I think there's a lot of support in what the FTC has said about a judgment being tantamount to a credit account. And I'm not – I'm not taking that on in this appeal. What I'm saying in this appeal is there is no judgment. And in order to have a – a – a – Would you say a State law or a legally-created lien would be of the same ilk? Are you – you really want to narrow it just to a judgment? A judgment, Your Honor, because the lien in this case, there was a – there was a lien, a possessory lien on the vehicle, which can be used to satisfy or satisfy in part the claim for storage and – and towing. But once that vehicle is sold, then there's nothing more than a deficiency claim. And there's lots of law in California on deficiency claims. PCA wouldn't have had the lien in any of them. PCA would not have had the lien. PCA has assigned the claim, and it has a procedure for going to a lawyer in San Jose, which is – it's in the record, and they pull these credit reports to determine whether they want to pursue in litigation the person that they claim is liable for – for the lien. If the hard question for Experian and for PCA is what's left of Monet v. Drano if the ruling in this case is upheld, in my view, there's nothing left. You've overruled Monet v. Drano. I think similarly, if we look at TRW v. Andrews, it says we must construe the statute so that all of the various parts do their own work. And this Court was reversed because the statute of limitation section was construed in such a way that the exception swallowed up or the judicial construction swallowed up the construction that Congress enacted. The same thing will happen here with respect to the specific exception about permissible purposes that Congress carved out in 1996 when it said that child support organizations can access a credit report if they go through the certification procedure. If there are no questions – Well, why isn't this a credit transaction? It's not a credit transaction because she didn't ask for this to happen. There's a credit – Let me stop you right there, because you made a lot of argument about how that would make a section of the statute superfluous. We've already got a section of the statute with regard to business transactions initiated by the consumer. So that can't be a required element of credit transaction, except in your argument elsewhere. I mean, why does a credit transaction have to be one that's initiated by the consumer? It doesn't make – Let me play this out for a little bit. Towing company is instructed by the San Bruno police to move this car. And at least in front of us, there's no challenge to the validity of the direction or of the tow. Towing company is going to move the car, but it isn't being paid by the San Bruno police. It's willing to do that only because of the expectation that it's going to collect the towing fee. That expectation is built on the expectation of being able to collect either from the value of the car and or from the credit of the registered owner of the car. Why isn't this a credit transaction? Towing company doesn't do it unless they think it's going to get paid. It doesn't assess the creditworthiness of the owner of the car at the time it decides whether or not to tow the car. It enters into that – Is there anything in the statute about having made an assessment prior to the transaction of the creditworthiness? Yes. Credit transaction means they're depending upon somebody being good for it later. Towing company is depending upon somebody being good for it later. Your Honor, I think that would stand the statute on its head, but I don't think that's what Congress intended when it was enacting the Fair Credit Reporting Act to promote efficiency. I take that back. I mean, I take the big picture. I understand Congress's desire to protect privacy. They want to make sure that the people that get access to these reports have a legitimate reason. I don't have time figuring out why the towing company doesn't have or the collection agency, having been assigned the claim, doesn't have a legitimate reason. It's got a contract with the county or the state to tow these cars. It looks to the lien as principally in order to get paid. It does not look to the consumer to get paid. It has no relationship. How can you say that factually? If California law provides for collection of a deficiency judgment. It has to go through the process of getting a deficiency judgment. The same as when MasterCard has to go get a judgment to collect, too. That doesn't mean they don't depend upon the credit. But MasterCard has an application from the consumer where they ask MasterCard to extend them credit. That is the key focus or key element in a credit transaction. You don't have that here. Well, are you going back to who initiated the transaction? Because, like I say, F1 already covers that. I mean, if that was enough, then we wouldn't need Section A. Section A would be superfluous, which you already told me isn't how we're supposed to read statutes and which I already knew isn't how we're supposed to read statutes. I'm not saying it is a credit transaction, but so far I don't think, for that matter, I don't think either side has really come to grips with the reality here. I mean, if you play this out, what happens if the towing company can't do what it did here? Do you discourage them from towing cars in response to the request of the San Bruno police, and is that a good thing? I mean, I'm not sure that I understand this as being what the congressional enactment is supposed to be about. The congressional enactment is to protect consumer privacy. These reports are supposed to be private except for very limited circumstances. The towing issues between the towing company and the State of California have to be worked out with them. The towing companies take on the responsibility to tow cars off of the street, whether they're going to get paid or not. The towing company does it without any assurance. And it's going to get paid. Well, wait. Stop right there. You don't really think the towing company is going to do this if they don't have an expectation of getting paid. I think they have an expectation of getting paid. And I think they negotiate that with the State. And they pull the cars. But wouldn't the expectation of getting paid would be through a lawsuit for a deficiency, through the lien on the car and the deficiency, correct? A lien on the cars and a deficiency claim, and they have a process for going to court and getting judgments on these claims. And that's what should have happened here. And there are lots of defenses that Mrs. Pintos could have raised. They have an obligation to sell it for a commercial, in a commercially reasonable manner. They gave it away. There was no credit at all on this transaction. They have an obligation to post their storage charges and to say what the storage to maintain storage charges that are within the limits established by the State. They don't do that. There are lots of reasons that she could have defended the lawsuit for a deficiency claim, but we were never allowed to get to that because they didn't bring the lawsuit. Turning quickly to the second issue, Experian simply reads out of the statute its obligation to verify the uses that are certified by its subscriber. The trial court never reached this, but if you parse the statute and give any meaning at all to the third sentence, there has to be a difference between the certification that's signed by the subscriber when they agree to take the reports and the obligation of Experian to go and verify those uses that have been certified by them. What do you think it has to do to verify? Does it have to go out and check each transaction, or what does it have to do? Once the collection agency comes in and says, okay, we will comply with the law, what is the Experian expected to do? What do they have to do? I think the answer to that comes from this Court's decision in the Andrews case, which is that they have to do something that is reasonable. And what's reasonable is a question of fact that's generally decided by the jury. Alito, I'm sorry. The jury judgment should not have been granted. It would have to go back. It wouldn't be judgment. I would agree with the Court in the usual situation. However, here they have no evidence that they do anything to verify the uses that are certified. The record was clearly defined that the only information they have on Pacific creditors for a 15-year period is the information that was submitted with the initial application and the certification. They never went and asked a single question. Well, let's assume Hazbin is limited. Would you say it would be unreasonable for, say, Experian to say, look, we knew Hazbin was out there at the time of this transaction. It in effect says as long as it's a debt, it can be collected, and we've had we can rely on that. And we know that the PCA was only collecting on debts that had been created whether by lien or otherwise, and therefore we think it was fair and they were within the law, at least as the Ninth Circuit arguably interpreted it. Your Honor, this is a negligent standard and it's not a strict liability statute. If the case is reversed and remanded, I have the serious burden of proving negligence and that PCA was negligent in pulling the report and Experian was negligent in allowing them to access it. I'm sorry. I thought you were contending this would go back with directions. Well, I think that in terms of their argument about their procedures being reasonable as a matter of law, that it can be flipped around. And if they've done nothing to verify the uses that have been certified, they cannot satisfy their obligation to show a reasonable effort to verify. And we ought to be entitled to a finding or a direction on that basis. As for PCA and its pulling the report, I have to prove their negligence. As to the documents, this is a statute which involves regulations, requirements that they maintain procedures, which have great importance to the public, to Congress, to the FTC. And the people who are most likely to see these outside of the corporations are attorneys like myself. And our hands are tied. I have documents in there that show that what Experian is arguing now is a permissible purpose was recognized by it as an impermissible purpose in its 1995 to 2001 internal memos. And I think that their flip on this in 2001 is showing that there's no change in the law that occurred. It's simply bad faith. They're simply changing the rules and selling reports and getting more money. And if nothing else, Congress has an interest in this. Congress is about to convene another subcommittee hearing or committee hearing on the Fair Credit Reporting Act. This is information that should be shared with Congress, with the FTC, and this Court, the trial court, has sealed the documents, made it impossible for anybody in my situation to go and explain to Congress what is actually happening in the field. Now, I'd like to reserve the rest of my time if I could. Thank you. Thank you. Good morning, Your Honors. If it please the Court, Daniel McClune for the appellee, Experian Information Solutions, Inc. Our co-appellee counsel had requested five minutes to argue on behalf of his client, the Credit Bureau, and we were willing to cede the five minutes. Your Honors, I think Judge Clifton hit the nail on the head when he focused on the definition of credit transaction, and there is simply no requirement that a credit transaction for purposes of this section of the FCRA be initiated by the consumer. Your Honor, what credit did Experian or PCA extend to Ms. Pintos, and what account did Ms. Pintos have with PCA or Experian? Your Honor, the account was with P&S Towing. I understand that. So what account? It was an account that was opened. What credit account did Ms. Pintos have with PCA? There was an account that was opened on May 29, 2002. A debit was made to that account for the charge of a tow. Wait, wait, wait. Whose account? It was an account on the books of P&S Towing. Right. So Ms. Pintos had no dealings with PCA, the towing company. The towing company never came and went to Ms. Pintos and said, okay, let's finish counsel. Never went to Ms. Pintos and said, okay, we got your car, you owe us for the towing, we'll extend you credit, did it? It did not. Okay. Where's the credit transaction involving the consumer? It was just as Judge Clifton described it. Maybe I didn't understand Judge Clifton. And what I'm saying, I want you to explain to me, when they towed that car, what was the credit transaction? Where did they extend credit to Ms. Pintos? Where did she establish? Where did she have an account? Ms. Pintos did not initiate a credit account. There was no consumer transaction. Is there involving Ms. Pintos? There was the provision of a service with the expectation of payment in the future and the expectation of payment in the future. I agree with that. In other words, there's no question. They were not extending credit. They were expecting to get paid. They were going to start by levying and leaning the car, of course, and then going to a lawsuit. And what I'm saying is, where is there a credit transaction? I mean, I could see the argument if she came in and said, look, I can't pay for the tow. And they said, well, all right, we'll give you the car. I've never seen this kind of largesse with a towing company. But we'll give you the car back and we'll let you pay over time. Different situation. But I'm having trouble seeing how, if you look at the terms of the statute, credit transaction involving the consumer, I don't see one there. And then it's and. It's in the conjunctive. And involving the extension of credit to, et cetera, a collection. You've got to have both. And I don't see the first prong. Or even the second prong, for that matter. Your Honor, if the definition of credit transaction, which doesn't appear in the statute and doesn't appear anywhere in the legislature. It is. I believe it is any relationship between two parties that can be characterized as a relationship of a creditor owed a debt. That's really as broad as all outdoors. That would cover the case of all the other. Excuse me. Of money or any other situation where a potential claimant decides to investigate the creditworthiness of a potential defendant before filing a litigation. And we know that that is not itself a sufficient reason to permit access to a credit report. I agree. It can't be simply the possibility of a monetary claim between two parties. I certainly agree with that, Your Honor. I think if you're trying to define, the problem with saying, the problem with my first answer was saying that a credit transaction exists when there's two parties that have the relationship of a creditor who's owed a debt by a debtor. Then you have the problem of defining a debt. And my definition of a debt would not include an inchoate tort claim. Well, how about the element here? At the time of the tow, did the towing company even know who the registered owner of the vehicle was? I'm not certain of the answer. And I don't believe the answer is in the record. They certainly knew it promptly after that. It's pretty likely that the decision to tow had nothing to do with the creditworthiness of the registered owner. No. It's not like they're making a decision, well, we'll tow this car because it belongs to Bill Gates, but we won't tow this car because it belongs to somebody who we don't think can stand behind a debt. No, I understand. And Judge Valle, you were correct that this section of the FCRA has several components to it. The first component, which was a language that you were reading, dealt with an extension of credit to the consumer. And it is not our belief that the towing company or its collection agency was using a credit report for the purpose of making a decision on the extension of credit to a consumer. And if we were dealing with a factual scenario that you just described, deciding whose car is to tow, and then looking at a credit report to make that decision, we might be able to make that argument. But that's not what happened here, and that's not the argument we're making. This statute is written in the disjunctive. The first component of that disjunctive is an extension of credit. The second component is the collection of an account. But it's not, both of them, it's not disjunctive. The two components, it says, and it seems to me that the purpose of this was to allow people to control the use and protect the privacy of their credit information, which it seems that your position is essentially driving a truck through. The point here is it must be, it seems to me that if you look at what the goal is here and the way the statute is worded, the idea is the consumer is going to open a transaction where the consumer could reasonably anticipate their credit is going to be checked. Banking, whatever. You're going to get the loan, the MasterCard, as Judge Clifton pointed out. But here, the very words of the statute, credit transaction involving the consumer. We had no credit transaction involving the consumer. To say that, where was the credit? There was no credit extended here to the consumer. There was no credit at all. The company said, we're not going to give you credit. We want our money now, and we'll do it by lien, and we'll do it by lawsuit if we have to. The only reason the credit was checked was not to determine, was only to determine whether it was worthwhile filing a lawsuit, not to extend credit to the consumer. Well, I don't believe that there's anything in the record that justifies the argument that counsel made, that the specific reason that the credit report was pulled was to decide whether to file a lawsuit. That has been his argument, but if you read the briefs and his citations to the record, it doesn't say that. Did it ever say, look, we've checked your credit? Do you have anything in the record that says, look, we don't think a lawsuit is going to be, we're going to extend your payments over time, we know you don't have the money right now, and she said, okay, thanks, I appreciate that. That never happened, did it? Or anything like that. No. Your Honor, I've It's just for them to make a decision whether they're going to pursue it. I've tried to concede over and over again, this was not a consumer-initiated credit transaction. And if it is the Court's view that notwithstanding the fact that subdivision F uses the phrase consumer-initiated Why was it a credit transaction involving the consumer? Because there was a debt owed as a result of an account. There was an account opened. There was a legal liability for that account. But a consumer, right? No, it was not consumer-initiated. And I say that over and over again. And if the Court's view Consumer-approved. Doesn't have to be consumer-approved. It has to be a transaction where there is a debt owed. And the consumer can certainly affect the amount of the debt. The Petitioner could have at any time gone in and retrieved her car and paid the debt and cut it off. But she chose to either leave it in the hands of her son or for whatever reason not to attempt. And as a result, each day on the account of the towing service, an additional charge for another day's worth of storage was accrued. And so my point to you, Your Honor, is if the Court is going to interpret A credit transaction. Right. A credit transaction to me implies you are going to extend or pay over time, you're going to make a loan of money, i.e., the banks. This is just a situation where their right to payment accrues when they tow the car in effect. Somebody's got to pay them. Right. Either it's going to come, it's not going to come through the State, it's either going to come through the lien, and then they can do whatever they want in terms of a lawsuit like any other creditor. But it's not a credit transaction. The amount due becomes due at the time of the tow. It's just how are we going to collect it. Perhaps I should return to this Court's opinion in Hasbun, because if that's this Court's view, I think the Court has to overturn the Hasbun. Well, they might not have to overturn the Hasbun decision, but they certainly have to overturn the analysis that was provided with the Hasbun decision. I think the analysis was correct, and frankly, the FTC agrees with it. In a situation where a consumer claims that they were molested by their dentist, which is one of the cases that the appellate has pointed to, and seeks a credit report, I concede, they argue, that if the purpose of seeking that credit report is to find out whether the dentist is judgment-proof, that is not a debt, that's not a person who is in a position of a creditor attempting to collect on a debt, it's not a credit transaction. But if that consumer goes ahead and sues and gets a judgment, it doesn't change the nature of the underlying transaction. The judgment wasn't voluntarily entered into by the dentist. The dentist didn't come forward and say, okay, you got me, I want to make payment terms over time because I molested you. There is a relationship that is formed as a result of the judgment that is the relationship of a creditor who is owed a debt by the dentist. And both sides seem to concede that once that judgment is entered, now all of a sudden you have a permissible purpose to pull a credit report. That's an attempt to, I presume, to reconcile Hasbun. But it does seem to me that what you're arguing, in effect, reads out a good portion of the statute and its purpose in protecting consumers, and would effectively say that anybody who has a debt that has been reduced to a fixed amount could go in and try to get a credit check, saying that it is on account, even though I've never had any dealings with a consumer. Well, Your Honor, I think there has to be – first of all, let me just disagree slightly with the articulation of the purpose of the statute. I think you disagree with almost everything I said, so go ahead. Well, the purpose of the statute, I'm reading from 1681, is to require that consumer reporting agencies such as my client adopt reasonable procedures for meeting the needs of commerce. And then it goes on in a manner that's fair and reasonable to consumers in light of the consumer's interest. So what this Court is required to do, I submit, is to balance the needs of commerce against a consumer's right to privacy. Now, in a situation where the consumer has opened a credit card, and they never voluntarily made any charges on the credit card, but say they used it to make a reservation at a hotel, and they gave the credit card number, but they canceled it, but the hotel still charges their credit card. The consumer will say, I never authorized my credit card to be charged. It's not a valid debt. I dispute it. Yet the credit card company still has the right to collect the debt by pulling a credit report. Even though the consumer says, I didn't initiate that charge, I didn't approve that charge. So when you're talking about the consumer's interest of privacy, you can't be misleading. In fact, whether the relationship was established, here, there was no relationship. Your Honor, a consumer can say someone used my credit card without my knowledge. Now you're collapsing problems of proof with the reach of the statute. You're doing apples and oranges here. I agree with you, and I've had those cases where the consumer says, I don't know what they're talking about. It was forged. I never sought credit. The issue there is, is this a consumer who sought credit? There's no dispute here that Ms. Pintos ever sought credit from anybody. She didn't want a car towed. She didn't want to establish any kind of a debt to PCA or its S&R. I mean, those are two different things, in my view, that you're arguing here. Right. The only thing I can say, and I think you've heard my argument, is that I believe, Judge Shabeli, that you are equating the term credit transaction with the phrase consumer-initiated credit transaction. And I believe there are people. I'm equating it with the consumer. I will agree with you that the consumer has to be involved. I'm equating it with, in some fashion, extending credit to the consumer. I suppose there are some ways in which credit could be, I suppose, I don't know what they are, that credit could be given to the consumer through a third party. Maybe that would come within it, too. But what I'm saying is that there has to be some transaction which the consumer either seeks or gets credit from the other part of the transaction and then there's an attempt to collect on that account. And I don't think either is met here. I submit to Your Honor that in order to reconcile this Court's reasoning in the Hasbin decision and, in fact, the position of the Federal Trade Commission about judgment creditors, you cannot strictly interpret the phrase credit transaction to be a situation where the consumer has come forward and said, rely upon my credit to give me a debt because otherwise. Defining principle, then. What is the limiting principle? And, Your Honor, Judge, I was trying to get to that when I said acknowledge the problem with my own analysis, which was now you have to define what does it mean to have the relationship of a creditor trying to collect on a debt. And I think there are some principles that can be widely accepted that give a great deal of guidance. It cannot be an inchoate claim. It cannot be someone suing on a tort claim, such as a claim for unfair business competition as in one of the cases cited by the appellant, the case for sexual battery, and another case. Those kinds of inchoate tort claims do not form the relationship of creditor to debtor. But in a situation like this where you have an ongoing business, a tow company, that has a set of books of accounts where there are charges being made to the account, there was credits being made to the account based upon the sale of the vehicle, it was only the net amount of the account after you deducted for the proceeds of the sale that was referred to the collection agency, this is the aspect of commerce that Congress was trying to promote. And I submit to you in those sorts of situations like this one, where there was real commerce going on, there was a real business that was providing real service with the expectation of payment, they maintained a book of accounts, there were charges made to the account, there were credits made to the account, there was a net amount, the net amount was sent to collection, it was a debt. And there may be defenses that they want to try to argue to the debt, but when you look at the fundamental nature of the transaction, certainly. I'm running out of time, and I wanted to leave my co-counsel a few minutes. What's the answer? The answer is when there is a recognized, objective, liquidated debt, and there is a effort to collect on a debt, it's the fact that the debt is owed and there is an effort to collect it that makes it a credit relationship. Thank you, Your Honor. May it please the Court. Andrew Steinheimer on behalf of the Pacific Creditors Association. I really just wanted to address the Court in terms of Mr. McLuhan's arguments. I agree with everything that he said. In terms of the credit that Judge Schiavelli, the question that Judge Schiavelli posed, I believe that Mr. McLuhan and Judge Clifton has answered that, and that the credit transaction or the credit that we're dealing with here is created by operation of law when the San Bernardo Police Department towed the vehicle. In essence, what you're saying, as soon as there is a liquidated debt, that's a credit transaction. You're saying that you're almost saying that if I go into the grocery store and they ring it up, until I pay it, that's a credit transaction. And then once I hand them the money, I've taken care of it. I mean, here you're saying it's a credit transaction because there's a liquidated sum owed. End of story. I think that is the case under the Fair Credit Reporting Act. And if you look at the Fair Credit Reporting Act in total, Mr. McLuhan has pointed out that the nature of the Fair Credit Reporting Act is not just to protect the consumer's privacy. It is also to regulate the banking industry, the extension of credit, and the collection. Right. The extension of credit. Nobody extended credit to Ms. Pintos here. They wanted, everybody wanted their money immediately. There was no extension. Nobody said you've got time to pay it. Isn't that correct? Ms. Pintos did not pay the bill. It's a simple question. Did anybody at any time extend a credit to Ms. Pintos? I understand that on the books it was shown as an amount owed, but nobody ever suggested to Ms. Pintos that she had time to pay this offer and give me a credit, did they? Well, that's not entirely true. I mean, in terms of offering to settle the account. No, I'm not talking about offering to settle the account. I'm saying because this talks about at the time it's contemplated. Who extended a credit transaction to Ms. Pintos, please? By towing her car. She was involved in what ended up being a credit transaction, Your Honor. And where was the credit extended to her? It was walled. They held her car for 60 days while she didn't come and pick it up. They're incurring charges. This wasn't a credit transaction. They wanted their money right now. Nobody said, oh, we'll just hold your car and whenever you get around to paying it, that's fine, right? No, they wanted their money and they wanted her to come pick up her car and she didn't do that. All right. Go ahead. Just looking at the FCR as a whole, though, people credit report all sorts of debts that are not terms of credit transactions. Bounced checks are credit reported. Medical bills are credit reported. Towing charges are credit reported. And if you're going to draw a distinction here saying that credit transaction means a transaction in which she applied for credit and it was granted, then that changes the entire FCRA and you're going to be changing what somebody can report to Experian, what they can provide to other people, and you're going to change the very nature of the whole credit bureau relationship with its consumers and with debtors. I think that the term creditor and debtor are used throughout both the FDCPA and the FCRA to mean debtor or consumer, somebody who owes the debt or is alleged to owe the debt, and creditor as the person who the debt is owed to. And that same creditor-debtor relationship is what is applicable here in this credit transaction phrase and collecting on an account. Again, Mr. McClune covered the argument in terms of if you are going to agree with what the plaintiff is saying and say that this is not a credit transaction, then neither is reducing any kind of debt that was not subject to a credit transaction to a judgment. That doesn't change the nature of it into a credit transaction either, and that is what the Hasbin case held initially. And then, again, the Hasbin case relied upon the edge. The other question was why shouldn't Hasbin be limited to its terms, which is what I guess what the plaintiff said, and that is, okay, once you've reduced it to a judgment. Well, my question — I agree with you. I'm not sure I see any realistic way of differentiating between the debt pre- and post-judgment. I mean, I agree with you on that, which raises serious questions in my mind. I mean, I think that the idea of limiting it to its terms doesn't make any sense, because if you read the what Hasbin relied upon, it's either overruling it or it's agreeing with the analysis. Okay. Thank you. Thank you. I have a few comments to clean up. Mr. McClune challenged this on the record as the reasons for pulling the credit report of Ms. Pintos at the excerpts of records submitted by Pacific Creditors. There are two volumes, the first volume at page ER-123. The representative of Pacific Creditors testified that the two people who decided to pull a credit report, this was the question I asked, if the two of them come to the conclusion that this is a claim they're looking at is one that might go to litigation, then they pull a credit report on the person against whom this claim is being asserted. His answer was yes. And a few pages later in the record, he explained that we – this is at page ER-127 of Pacific Creditors' excerpts. He explained that we sue people that are broke, but if we had a means of collecting In the context of this, it was clear that they were looking at Mrs. Pintos' credit report to determine whether or not they would go ahead and bring a lawsuit against her to collect on the deficiency claim. Mr. McClune said the FTC does not agree with our analysis. I think that's not an accurate statement. And I think I've put a lot of the FTC staff opinion letters in and references to the FTC commentary about the Fair Credit Reporting Act. And while there are portions of the commentary which could be viewed as supporting experience position taken out of context, I think the overall impression that you're to judgment. There's a whole series of opinion letters on the judgment. And what about counsel's position? And I think there's some force to it. What's the analytical difference between saying if you couldn't do it pre the moment when the judgment is ended, now you can get the credit report after? Is there any analytical difference under the statute between the two? Yes, I think there is. And I think there's – I mean, it has been basically, I think, took, in effect, the position that the defendants take here, and that is it more broadly and expansively interprets it and says, okay, you had a judgment. That is, in effect, the credit transaction. But analytically, aren't defendants corrected? Is there an analytic difference under the statute between pre and post judgment? Yes, there is a difference. And the difference is that there has been a legal process to determine whether a debt is actually owed or not. In this case, there has never been a legal process to determine whether Mrs. Pintos actually owes a cent. There are lots of good defenses to P&S Towing's claim for a towing deficiency. P&S tows the cars. It has an obligation to give the proper notice. It has an obligation to charge the right amounts. It has an obligation to sell the vehicles in a commercially reasonable manner. It has an obligation not to just pocket the money and say, you owe us everything that we claim, in order to avoid ever dealing with any of those issues. It doesn't bring the lawsuit in this case. Instead, it brings Mrs. Pintos' credit report into play and calls her up and starts to harass her and threaten her credit. That is not a permissible use of a credit report. And there is very much of a distinction between being able to go to court and confront P&S Towing or PCA collection agency and say, you can't prove your case, or here are my objective facts, my evidence why your claim is no good. They never did that. If they'd done it and they'd gotten a credit or a judgment against Mrs. Pintos and we were dealing with a has-been case, I probably wouldn't have brought the appeal. I mean, it seems to me that we have to deal with a has-been case. But the has-been case simply accepts the FTC's determination or its view that once there is a judgment, that becomes a debt. There's no judgment here. The problems that are created by eradicating a distinction between the two. A statutory lien for the full amount on the car and a right to collect a deficiency judgment, isn't that tantamount to a judgment? No. In effect, that it's been determined what the amount is, et cetera. I mean, I understand the arguments, you're arguing over the amount, but the question is, is it a debt sufficient? You're essentially saying once there's a, in effect, a liquidated debt, in this case by judgment, it's okay to do the credit, pull the credit under a has-been. And I'm not so sure I see as counsel was arguing that if you've got the lien and the amount, let me ask you this, if there was an issue, let's say Ms. Has-been said, look, you know, I just shouldn't have been there, I was parked wrong, you were right to collect it, your charges are correct, I don't know if I can pay it. No argument over the amount, liquidated debt, lien is there, could they check her credit? No. She agrees to the amount. Let's forget the defenses for a moment. She's absolutely right. And I will give the money. I still have it. Your Honor, I don't think that would give them a right to pull her credit if she said I'm going to pay you the money. But the lien here is extinguished when, I see I'm out of time. It's extinguished when they sell the car. And what they're left with is a claim they can prove in court. But they didn't do it. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Clifton, Schiavelli